AO 93C  (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means       ☐ Original       ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br><br>A space grey Apple iPhone 11 cellular telephone seized by the Santa Ana Police Department ("SAPD") on or about April 21, 2020, and currently in the possession of the SAPD in Santa Ana, California | Case No. 8:20-mj-00467-DUTY |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Central District of California *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

Such affidavit(s) or testimony are incorporated herein by reference and attached hereto.

**YOU ARE COMMANDED** to execute this warrant on or before <u>14 days from the date of its issuance</u> *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>the U.S. Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.</u>

☐ Pursuant to <u>18 U.S.C. § 3103a(b)</u>, I find that immediate notification may have an adverse result listed in <u>18 U.S.C. § 2705</u> (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   July 31, 2020 at 2:50 p.m.        *Karen E. Scott*
                                                                                              *Judge's signature*

City and state:   Santa Ana, CA                         HONORABLE KAREN E. SCOTT, U.S. Magistrate Judge
                                                                                          *Printed name and title*

AUSA:    D. Ahn (x3539)

AO 93C (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means (Page 2)

## Return

| Case No.: 8:20-mj-00467-DUTY | Date and time warrant executed: 8/3/2020 APPX 6:28 AM | Copy of warrant and inventory left with: None |
|---|---|---|

Inventory made in the presence of: TFO Robert Velasco SAPD

Inventory of the property taken and name of any person(s) seized:

No items seized pursuant to the warrant

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 8/3/2020

_____
Executing officer's signature

Scott Robbins US Postal Inspector
_____
Printed name and title

**ATTACHMENT A**

I. **DEVICE TO BE SEARCHED**

The SUBJECT DEVICE is a space grey Apple iPhone 11 cellular telephone seized by the Santa Ana Police Department ("SAPD") on or about April 21, 2020, and currently in the possession of the SAPD in Santa Ana, California.

**ATTACHMENT B**

I. **ITEMS TO BE SEIZED**

    1.    The items to be seized are evidence, contraband, fruits, and instrumentalities of violations of Title 21 U.S.C. § 841(a) (possession with intent to distribute controlled substances) (the "SUBJECT OFFENSE"), namely:

        a.    Data, records, documents, or information (including electronic mail and messages) pertaining to narcotics trafficking, including the obtaining, possessing, using, or transferring of personal and/or financial transaction identification information, such as names, addresses, phone numbers, credit and debit card numbers, security codes, bank account and other financial institution account numbers, Social Security numbers, email addresses, IP addresses, as well as PIN numbers and passwords for financial institutions or internet service providers;

        b.    Data, records, documents, or information (including electronic mail and messages) pertaining to illicit controlled substances.

        c.    Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the SUBJECT OFFENSE;

        d.    Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook,

ii

Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications or other text or written communications sent to or received from any digital device concerning the SUBJECT OFFENSE; and

     e.  Any device used to facilitate the SUBJECT OFFENSE (and forensic copies thereof).

     f.  Any SUBJECT DEVICE which is itself or which contains evidence, contraband, fruits, or instrumentalities of the SUBJECT OFFENSE, and forensic copies thereof.

     g.  With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

          i.  evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

          ii.  evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

          iii. evidence of the attachment of other devices;

          iv.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

    v. evidence of the times the device was used;

    vi. passwords, encryption keys, and other access devices that may be necessary to access the device;

    vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

    viii. records of or information about Internet Protocol addresses used by the device;

    ix. records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

  2. As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

## II. SEARCH PROCEDURE FOR THE SUBJECT DEVICE

  3. In searching the SUBJECT DEVICE (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure:

    a. Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICE capable of being used to facilitate

the SUBJECT OFFENSE or containing data falling within the scope of the items to be seized.

   b.   The search team will, in its discretion, either search the SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

   c.   The search team shall complete the search of the SUBJECT DEVICE as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital device(s) beyond this 120-day period without obtaining an extension of time order from the Court.

   d.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

      i.   The search team may subject all of the data contained in any SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

      ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

      iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool

Kit), which tools may use hashing and other sophisticated techniques.

   e. If the search team, while searching the SUBJECT DEVICE, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that SUBJECT DEVICE pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

   f. If the search determines that the SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

   g. If the search determines that the SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

   h. If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

        i.    The government may also retain the SUBJECT DEVICE if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

        j.    After the completion of the search of the SUBJECT DEVICE, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

# **A F F I D A V I T**

I, Paul Yasutake, being duly sworn, declare and state as follows:

## I. PURPOSE OF THE AFFIDAVIT

1. This affidavit is made in support of an application for a warrant to search the digital device seized by the Santa Ana Police Department ("SAPD") on or about April 21, 2020, hereafter referred to as the "SUBJECT DEVICE."

2. I seek a search warrant for the SUBJECT DEVICE, further described below as well as in **Attachment A**, for evidence, contraband, fruits, and instrumentalities of violations of 21 U.S.C. § 841(a) (possession with intent to distribute controlled substances) (the "SUBJECT OFFENSE"), as described further in **Attachment B**. **Attachments A** and **B** are incorporated herein by reference.

## II. BACKGROUND OF TASK FORCE OFFICER PAUL YASUTAKE

3. I am currently a Special Agent ("SA") with the California Department of Justice ("CA DOJ"), Los Angeles Regional Office, and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI").

4. I have been employed by the CA DOJ since April 2001. I completed a 16-week basic training course in Sacramento, California. I currently hold an Advanced Certificate from the Commission on Peace Officer Standards and Training. I have received formal and informal training in the investigation of

criminal activity involving money laundering, organized crime, fraud, and illicit narcotic activity, among others. I was previously assigned to the Bureau of Narcotic Enforcement where I was responsible for conducting investigations into mid to major level narcotics trafficking, gangs, clandestine laboratories, and pharmaceutical drug diversion.

5. I am a member of the Orange County Asian Organized Crime Task Force ("OCAOCTF"). The OCAOCTF is composed of federal and local law enforcement agencies, including, but not limited to, the FBI and detectives from the SAPD. The OCAOCTF is responsible for, among other things, investigating violations of federal law, including money laundering, identity theft, drug-trafficking crimes, and crimes of violence, such as aggravated assault and robbery committed by criminal organizations and other criminal street gangs in Orange County.

6. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

Case 8:20-mj-00467-DUTY   Document 3   Filed 08/06/20   Page 12 of 20   Page ID #:90
Case 8:20-mj-00467-DUTY *SEALED*   Document 2 *SEALED*   Filed 07/31/20   Page 12 of 20
Page ID #:51

## III. STATEMENT OF PROBABLE CAUSE

7. Based on the following, a suspect named Johnny Van NGUYEN ("NGUYEN") is believed to be part of a conspiracy to distribute illicit controlled substances.

8. On December 1, 2019, NGUYEN was observed by Officer ("Ofc.") Sattar, who initiated a traffic stop on a Silver Honda Accord for a violation of the California Vehicle Code ("CVC"). The driver was identified as NGUYEN. NGUYEN was detained by Ofc. Sattar after he admitted to possessing methamphetamine. Ofc. Sattar conducted a search of the silver Honda Accord. Ofc. Sattar located approximately 1.7 grams of a white crystalline substance resembling methamphetamine and a stack of U.S. currency held together by rubber bands inside a black backpack. The cash had a post-it attached reading "$1,226 11/30 pm JB."

9. During a Miranda interview, NGUYEN admitted to smoking methamphetamine. NGUYEN admitted the black backpack found inside the vehicle belonged to him. NGUYEN was cited and released at the scene.

10. About two months later, on January 31, 2020, SAPD Gang Detectives initiated a traffic stop on a white Lexus RX350 SUV. The driver of the vehicle was identified as NGUYEN. NGUYEN told Detective ("Det.") Raya he was on his way to work at "Asia." Det. Raya observed a black bag on NGUYEN's lap. The rear passenger was identified as Ernesto CELAYA. CELAYA admitted to Det. Raya that he had methamphetamine in his possession. Det. Raya searched CELAYA and found approximately 1.75 grams of a white crystal-like substance presumed to be methamphetamine.

3

Case 8:20-mj-00467-DUTY   Document 3   Filed 08/06/20   Page 13 of 20   Page ID #:91
Case 8:20-mj-00467-DUTY *SEALED*   Document 2 *SEALED*   Filed 07/31/20   Page 13 of 20
Page ID #:52

11. Det. Raya contacted NGUYEN and told him CELAYA had narcotics in his possession. Det. Raya told NGUYEN that they were going to check his vehicle for additional narcotics and NGUYEN said "alright." Det. Raya and Det. Bodnar searched the vehicle. Det. Raya found $4,000 in U.S. currency and a total of forty-one grams of a white crystal-like substance presumed to be methamphetamine. NGUYEN was arrested and transported to the Santa Ana City Jail. Based on my training and experience, forty-one grams of methamphetamine is a distribution quantity.

12. Under Miranda, NGUYEN admitted to Det. Raya that the backpack belonged to him. NGUYEN admitted to buying all of the methamphetamine and stated he gave it to his friends and used it personally.

13. A few weeks later, on February 18, 2020, SAPD officers conducted a patrol check at EZ Boba. NGUYEN was discovered by SAPD officers and detained. SAPD officers located a clear plastic baggie containing a white crystalline substance resembling methamphetamine weighing 14.7 grams gross weight. NGUYEN admitted to Ofc. Smith that the plastic bag containing the suspected methamphetamine belonged to him. NGUYEN was arrested and transported to the Santa Ana City Jail. Based on my training and experience, 14.7 grams is a distribution quantity.

14. NGUYEN was advised of his Miranda rights by Ofc. Smith. NGUYEN then told Ofc. Smith that he shares the methamphetamine with other people. NGUYEN told Ofc. Smith he

4

does this routinely.  NGUYEN also stated he had transported the narcotics in his Lexus.

15.  On April 17, 2020, TFO Velasco obtained a warrant for NGUYEN's arrest for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii): Possession with Intent to Distribute Methamphetamine, based on the January 31, 2020 traffic stop made by the SAPD.

16.  On April 21, 2020, SAPD detectives found NGUYEN's white Lexus RX350 at 1836 South Bamdal Street, in the City of Santa Ana.

17.  TFO Velasco observed NGUYEN exit the residence and enter the front driver seat of the white Lexus RX350.  SAPD followed the Lexus.  SAPD Ofc. Gallardo initiated a traffic stop on NGUYEN's white Lexus for a CVC violation.  TFO Velasco advised Ofc. Gallardo of the outstanding arrest warrant for NGUYEN.  Ofc. Gallardo pulled over NGUYEN's vehicle and NGUYEN was arrested on the arrest warrant mentioned above.

18.  Ofc. Gallardo searched NGUYEN and his vehicle incident to the arrest.  Ofc. Gallardo located a space grey Apple iPhone 11 on NGUYEN's person (i.e., the SUBJECT DEVICE).  Ofc. Gallardo located a stack of U.S. currency wrapped with a rubber band on the center console.  There was a post-it note on the money, which said, "$2283 4/20 AA pm."

### IV. TRAINING AND EXPERIENCE ON NARCOTICS TRAFFICKING

19.  Based upon my training and experience, including investigations involving narcotics trafficking, I know that:

5

Case 8:20-mj-00467-DUTY   Document 3   Filed 08/06/20   Page 15 of 20   Page ID #:93
Case 8:20-mj-00467-DUTY *SEALED*   Document 2 *SEALED*   Filed 07/31/20   Page 15 of 20
Page ID #:54

a. Persons involved in organized criminal activity, including narcotics trafficking, commonly utilize telecommunication devices such as cellular telephones, smart phones, tablets, etc., to further their illegal operations and communicate with associates.

b. I am aware that persons involved in these criminal activities commonly transfer data from one storage device to another to allow for instant and easy access of information. I am also aware it is common practice for co-conspirators to transfer information and maintain communication with each other via electronic data storage and or communication devices. The transfer of data and or communication is commonly done between mobile devices, such as smartphones and tablets, via text messaging and/or e-mail. Other methods of transferring data between devices include the downloading of data from mobile devices to desktop and laptop computers. The data can then be downloaded to portable hard drives, thumb drives, and/or other electronic data storage devices.

c. People involved in narcotics trafficking commonly maintain addresses and/or telephone numbers in their telephones, computers, and/or other digital devices which reflect names, addresses, and/or telephone numbers of their associates in the narcotics trafficking organization. People involved in narcotics trafficking are commonly in contact with these associates via telephones, computers, and/or other digital devices, and they often keep records of recent incoming and

outgoing calls, emails, voicemails, text messages, social media messages, and other communications.

   d. People involved in narcotics trafficking often use the text messaging feature which allows individuals to send text messages over their telephones, computers, and/or other digital devices to contact their associates and to avoid detection by law enforcement.

   e. People involved in narcotics trafficking often leave and receive voicemail messages with their associates, suppliers, and customers.

   f. Identifying the names and numbers in telephones, computers, and/or other digital devices, (as well as GPS information on the devices) believed to be used by a person involved in narcotics trafficking can lead to the identification of their associates, the location of "stash houses" where additional narcotics and or the proceeds from the sales of narcotics are stored, the geographic breadth of the narcotics trafficking operation, and the identities of potential suppliers, customers, leaders, managers, or supervisors of narcotics trafficking organization by examining the calling patterns of these individuals.

   g. Successful narcotics traffickers generate large sums of money from their illicit business often launder the proceeds of their illicit business to make them appear legitimate or put them beyond the reach of law enforcement. Typically this is done by wiring or depositing cash into bank accounts or other investment vehicles such as brokerage

accounts. Evidence of these types of transactions can often be found by searching telephones, computers, and/or other digital devices.

### V. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

20. As used herein, the term "digital devices" includes the SUBJECT DEVICE.

21. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

   a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

   b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That

Case 8:20-mj-00467-DUTY   Document 3   Filed 08/06/20   Page 18 of 20   Page ID #:96
Case 8:20-mj-00467-DUTY *SEALED*   Document 2 *SEALED*   Filed 07/31/20   Page 18 of 20
Page ID #:57

evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

       c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

       d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

    22.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

       a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus,

9

often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

      b.   Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

    23.   Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VI. CONCLUSION

    24.   For all the reasons described above, there is probable cause to believe that the items listed in **Attachment B**, which constitute evidence, fruits, and instrumentalities of violations

//

//

of the SUBJECT OFFENSE described above, will be found on the SUBJECT DEVICE described in **Attachment A**.

Attested to by the applicant in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 by telephone on this  31  day of July 2020.

*Karen E. Scott*
HONORABLE KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE